David Wilson v. Commissioner.
Wilson v. Commissioner
Docket No. 6867.
United States Tax Court
1946 Tax Ct. Memo LEXIS 179; 5 T.C.M. (CCH) 439; T.C.M. (RIA) 46126; May 28, 1946
*179 The petitioner carried on a rendering business in 1941 which was started in 1933 with only a nominal capital. The petitioner and his wife orally agreed in 1933 that both would devote full time services to the business and that the profits would be shared equally. This agreement was known only by the husband and wife and the petitioner generally represented himself as "owner." Profits were used for family expenses and for purchase of additional equipment. Surplus profits were used for the purchase of real estate, title to which was taken in the joint names of husband and wife, and for the purchase of bonds, some in joint names and some in the separate name of each. Held, that the alleged partnership may not be recognized for income tax purposes. John W. Lyons, Esq., 330 Lemcke Bldg., Indianapolis, Ind., and Albert Stump, Esq., for the petitioner. Lester M. Ponder, Esq., for the respondent. SMITH Memorandum Findings of Fact and Opinion SMITH, Judge: This is a proceeding for the redetermination of a deficiency in income tax for 1941 in the amount of $1,596.89. The question in issue is whether a business conducted under the name of Noblesville Rendering Co. was *180 a partnership during the taxable year recognizable for income tax purposes. Findings of Fact Petitioner is a resident of Noblesville, Ind. His income tax return for 1941 was filed with the collector of internal revenue at Indianapolis. From 1925 to 1933 the petitioner was engaged in the rendering business at Tipton, Ind., in partnership with his brother. The business consisted of collecting the carcasses of horses, hogs, sheep and cows that die from accidents or natural causes, and processing them into grease, oil, cured hides, wool and tankage. The business was not a success and the partnership was dissolved on May 8, 1933, the petitioner receiving upon dissolution a Chevrolet truck upon which $500 was still owing. Prior to 1933 the petitioner's family, consisting of himself, his wife, and two children, had moved from Tipton to Noblesville, Ind., about 18 to 20 miles from Tipton. There they lived in a rented house for which they paid $10 per month rent. For some years prior to 1932 the petitioner's father and his uncle, Otis Wilson, had been operating a rendering plant at Noblesville under the name of Noblesville Rendering Co. Petitioner's father died in 1932 and the plant *181 was closed down from about the date of his death. It was sufficiently equipped to carry on the rendering business and needed only minor repairs. It had on hand about $200 worth of coal and salt. In 1933 the petitioner made arrangements with his mother and uncle to rent the plant. At the time the petitioner had no money but owned his Chevrolet truck against which was a debt of $500. His wife had only $72. They orally agreed that they would pool their resources and be equal partners in the business which would be carried on under the name of Noblesville Rendering Co. They borrowed $100 from Otis Wilson and agreed to pay $200 for the coal and salt. The petitioner had learned from experience that success in the rendering business required that the owners of dead animals be able to telephone the rendering plant at any hour of the day or night and that the dead animals be promptly removed from the premises of the owner. Petitioner's wife agreed to receive all telephone calls at the house and do all that she could to make the business a success. Advertisements were placed in the local papers giving notice of the reopening of the Noblesville Rendering Co. plant and requesting persons *182 having dead animals to be removed to call the petitioner's telephone number and reverse the charges. Later on advertisements were placed in the telephone directories. When calls were received the petitioner collected the animal or animals and he, with a helper, processed them. After a time an additional truck was purchased and by 1941 five trucks were operated. The petitioner was busy at the rendering plant, which was located about one mile from town, 12 hours or more per day. His wife attended to all telephone calls and kept all records. By 1941 calls averaged from 20 to 40 per day, depending upon the season. It was her duty to arrange the routes for drivers and the drivers were instructed to call up when far from town to learn if any calls had been received which they could attend to before returning to the plant. Telephone calls were often received as early as five o'clock in the morning and sometimes up to midnight. In addition to receiving such calls petitioner's wife also ordered supplies for the plant, such as coal, salt and burlap bags, and when there were hides, wool, grease or other products for sale she called the different buyers and made sales to the highest bidder. *183 Sometimes she went to the plant in the absence of her husband to check the weighing of the goods sold. There was no telephone or office at the plant and the buyer often settled with the wife for goods purchased. Only one bank account was maintained and that was in the name of petitioner. Petitioner always drew the checks but in some cases his wife signed his name for him. The bank did not hesitate to honor the checks even when they had knowledge that the wife had signed her husband's name. Deposits in the bank were made either by the petitioner or his wife. Petitioner's only daughter was killed in an automobile accident in 1937. Her life was insured for the benefit of both the petitioner and his wife and the proceeds of the policy, amounting to $2,020, in excess of an amount used for funeral expenses were deposited in the one bank account; also $250 received from the insurance company which had insured against accident the driver of the automobile who had negligently caused the daughter's death. All moneys borrowed by the petitioner from the bank were on notes signed by both petitioner and his wife. The profits of the business were used for household expenses, the purchase *184 of trucks and other equipment, and for the purchase of real estate which was taken in the joint names of husband and wife; also for the purchase of bonds, some in their joint names and some in the separate name of each. The existence of a partnership between the petitioner and his wife was not generally known. There was never any writing until long after the taxable year evidencing the agreement. On many occasions the petitioner represented himself as the owner of the business. Thus the original Treasury Department form SS-4 under the Federal Security Laws filed by the business on October 11, 1937, states that the "Business name of establishment" is "Noblesville Rendering Co. David Wilson (owner)." The form is signed by "David Wilson" and his official position is stated to be "owner." Treasury Department forms SS-1a under the Federal Social Security Laws filed by the petitioner for the quarters ended March 31, 1941, September 30, 1941, and December 31, 1941, were signed by "David Wilson" and his title is stated to be "owner." Required returns filed with the Indiana State authorities showed the business to be an individual business and not a partnership business. Neither the petitioner *185 nor his wife ever made income tax returns to the Federal Government prior to 1940. Being advised that a return was required for 1940 the petitioner contacted an insurance man in Noblesville on the last day upon which a return for that year could be filed without penalty and he prepared a return which was executed by the petitioner in his own name accounting for all of the profits of the business. When it came time to file a return for 1941 petitioner's bank advised him to consult a certified public accountant and to have him make out any required returns. After the petitioner explained to him the method under which he and his wife operated the business he stated that a partnership return should be filed and that the petitioner and his wife should each file an individual return accounting for one-half of the profits. Such returns were filed. The respondent has determined that all of the profits of the business for 1941 are taxable to the petitioner. Opinion The only question presented by this proceeding is whether the petitioner is liable to income tax for 1941 upon all of the profits of a rendering business carried on under the name of Noblesville Rendering Co., or upon only *186 one-half of those profits. The petitioner contends that the Noblesville Rendering Co. was a partnership composed of himself and wife as equal partners. The pertinent provisions of the Code applicable in this case are as follows: SEC. 181. PARTNERSHIP NOT TAXABLE. Individuals carrying on business in partnership shall be liable for income tax only in their individual capacity. SEC. 3797. DEFINITIONS. (a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof - * * *
(2) Partnership and Partner. - The term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term "partner" includes a member in such a syndicate, group, pool, joint venture, or organization. No question is raised by that under Indiana law a wife may be a partner with her husband. The question here is whether there was any contract of partnership between the petitioner and his wife which may be recognized for income *187 tax purposes. Admittedly there was never anything but an oral agreement of partnership between husband and wife. So far as appears from the record the existence of the partnership from the inception of the business in 1933 through 1941 was known only to the husband and wife. The transcript of record in this proceeding shows the testimony of the petitioner in part as follows: Q. When you and your wife opened the business in Noblesville, tell what arrangements you had with respect to the way in which the work was to be done, that is, the carrying on of the business. A. When we were at Tipton we had already had some experience with what had to be done, and I had a brother there as a partner, and it was a complete failure. So when we came to Noblesville we said to ourselves there was two ends to this business, one end is to get the business, the other end is to process the business. I said from now on we would be partners in the business, the two of us. She would take one end of the business, I would take the other, and that is what we did for nine long years. Q. Tell about her work during that time, what she did. A. Her work was to help everyway she could in the business, anything *188 that she could do over the phone without leaving. She couldn't go away from the phone, out of hearing distance. She would buy all the supplies she could for me or for the business, if it was burlap bags or anything incidental to the business that she could find, burlap bags and empty barrels, twine and sacks, and order coal and order salt and take care of that phone, which was a confining job. Petitioner's wife testified that the agreement was that husband and wife should share the profits equally. We have no reason to question the truthfulness of the testimony of these witnesses. The problem presented is whether where a man and wife agree orally that the profits of a business shall be shared equally a partnership exists which may be recognized for income tax purposes. Thus, if a farmer agrees with his wife that the profits of farming operations shall be shared equally and the wife assists her husband in the carrying on of farming operations does a partnership exist whereby the husband and wife are taxable each on one-half of the profits? In this proceeding the respondent contends that the services rendered by the wife, which consisted principally of answering the telephone, *189 were of negligible value. We think the evidence shows that they were valuable services. We do not think, however, that they were in any way commensurate with the value of the services performed by the husband. He testified that he did the work of two men in carrying on the business and we cannot doubt that such was the fact. Although it would appear that during the year 1941 petitioner's wife had no assistance in attending the telephone, she did have such assistance in 1942. An office was established for the business which was not at the plant but was in the town. A girl was employed to answer the telephone and she was on duty eight hours a day. The telephone rang in the office and in the petitioner's home. But the girl answered the telephone while on duty and kept all records of the business in 1942. We think that the evidence shows that the Noblesville Rendering Co. as conducted during the year 1941 was more in the nature of a marital partnership than an ordinary business partnership. No records were kept showing the wife's distributable income. Surplus profits were used for the purchase of real estate in the joint names of husband and wife and bonds were purchased either in the *190 joint names or in the separate name of husband and wife. We think that there was no contract of partnership between husband and wife which would have made the wife answerable for losses of the business out of her separate property. In these circumstances we think that the Noblesville Rendering Co. for 1941 was not conducted as a partnership within the purview of the income tax law and that the petitioner is taxable upon the entire profits, as determined by the respondent. Decision will be entered for the respondent.